Michael R. Lozeau (State Bar No. 142893)
E. Paige Fennie (State Bar No. 330381)
LOZEAU DRURY LLP
1939 Harrison St., Suite 150
Oakland, CA 94612
Tel: (510) 836-4200
Fax: (510) 836-4205
E-mail: michael@lozeaudrury.com
       paige@lozeaudrury.com

Attorneys for Plaintiff
THE CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

Horace W. Green (State Bar No. 115699)
BROTHERS SMITH LLP
2033 N. Main Street, Suite 720
Walnut Creek, CA 94596
Tel: (925) 944-9700
Fax: (925) 944-9701
E-mail: hgreen@brotherssmithlaw.com

Attorney for Defendant
LYNX ENTERPRISES, INC.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LYNX ENTERPRISES, INC., a California Corporation,<br><br>Defendant. | Case No. 2:19-cv-02497-KJM-CKD<br><br>Assigned to Hon. Kimberly J. Mueller<br><br>CONSENT DECREE<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387) |

# CONSENT DECREE

This Consent Decree is hereby entered into by and between Plaintiff The California Sportfishing Protection Alliance ("CSPA") and Defendant Lynx Enterprises, Inc. ("Lynx") (all parties collectively are referred to as the "SETTLING PARTIES") with respect to the following facts and objectives:

**WHEREAS**, CSPA is a 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, dedicated to the protection, enhancement, and restoration of the Sacramento-San Joaquin Delta, and other California waters. Bill Jennings is the Chairperson of CSPA and a member of CSPA;

**WHEREAS**, Lynx owns and operates a full service precision sheet metal facility located at 724 E. Grant Line Road in Tracy, California (the "Facility"). Since at least December 4, 2018, the Facility has operated pursuant to State Water Resources Control Board Water Quality Order No. 2014-0057-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001 (hereinafter "General Permit"). A map of the Facility is attached hereto as Exhibit A and incorporated by reference;

**WHEREAS**, on or about October 7, 2019, CSPA provided Lynx with a Notice of Violation and Intent to File Suit ("60-Day Notice Letter") under Section 505 of the Federal Water Pollution Control Act (the "Act" or "Clean Water Act"), 33 U.S.C. § 1365;

**WHEREAS**, on December 13, 2019, CSPA filed its Complaint in the United States District Court for the Eastern District of California (*California Sportfishing Protection Alliance v. Lynx Enterprises, Inc.,* Case No. 2:19-cv-02497-KJM-CKD). A true and correct copy of the Complaint, including the 60-Day Notice Letter, is attached hereto as Exhibit B and incorporated by reference;

**WHEREAS**, Lynx denies any and all of CSPA's claims in its 60-Day Notice Letter and Complaint;

**WHEREAS**, since the filing of CSPA's Complaint, Lynx has made substantial changes to its storm water management practices at the Facility, including improvements

to its storm water sampling protocols, rerouting of stormwater from the Facility's roof to a pervious area of the Facility, and improved housekeeping in outdoor storage areas of the Facility;

**WHEREAS**, Lynx has committed to additional improvements to its sampling and storm water management program as specified in this Consent Decree;

**WHEREAS**, CSPA and Lynx, through their authorized representatives and without either adjudication of CSPA's claims or admission by Lynx of any alleged violation or other wrongdoing, have chosen to resolve in full CSPA's allegations in the 60-Day Notice Letter and Complaint through settlement and avoid the cost and uncertainties of further litigation; and

**WHEREAS**, the Settling Parties, through their authorized representatives and without either adjudication of CSPA's claims or any admission by Lynx of any alleged violation or other wrongdoing, believe it is in their mutual interest to resolve in full CSPA's allegations in the 60-Day Notice Letter and Complaint through settlement and avoid the cost and uncertainties of further litigation;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(l)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

2. Venue is appropriate in the Eastern District of California pursuant to Section 505(c)(l) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

3. The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I. OBJECTIVES

4. It is the express purpose of the SETTLING PARTIES entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, and to resolve those issues alleged by CSPA in its Complaint. In light of these objectives and as set forth fully below, Lynx agrees to comply with the provisions of this Consent Decree and to comply with the requirements of the Permit and all applicable provisions of the Clean Water Act at the Facility.

## II. COMMITMENTS OF LYNX

5. **Compliance with General Permit.** Lynx agrees to operate the Facility in compliance with the applicable requirements of the General Permit and the Clean Water Act.

6. **Implemented Storm Water Controls.** Lynx shall maintain in good working order all storm water collection and filter systems at the Facility currently installed or to be installed pursuant to this Consent Decree, including but not limited to, existing housekeeping measures.

   a. Lynx shall maintain the gravel surface in the Truck Parking Area to ensure gravel covers this entire area and prevents the disturbance and tracking of dirt and mud.

   b. Lynx shall continue to divert all stormwater flowing from the southern edge of its roof to the graveled Truck Parking Area.

7. **Storm Water Sampling Locations.** In addition to the current storm water sampling conducted at Drain 9 of the facility, beginning no later than November 16, 2020, Lynx shall collect and analyze storm water flowing off of Receiving and Storage Area E (depicted on Exhibit A). The sampling point shall be located to the east of Drain 1 at the front of the Facility. The approximate location of the additional sampling point is labeled "X-5" on Exhibit A. Lynx shall install barriers, berms, curbing, a trench drain, or other features as necessary to direct all stormwater flow from Area D to the discharge

location. The discharge location shall be designed to enable Lynx to install a Frontline Trench Drain Insert fitted with media designed to address zinc and other metals, described in Exhibit C. Alternatively, Lynx may install a Cleanway MetalZorb filter across the new discharge location. The filter shall be installed in a manner ensuring that all storm water exiting Area D flows through the filter. Stormwater samples shall be taken of storm water after it has passed through the filter.

8. **Best Management Practices.** By no later than November 16, 2020, Lynx shall implement the following best management practices ("BMPs") to improve the storm water pollution prevention measures at the Facility:

    a.    To filter storm water prior to discharge, Lynx shall install Frontline Catch Basin Inserts in Drains 1, 3, 4, 5, 6, 7, 8, and 9. The Frontline Catch Basin Inserts shall each include media inserts formulated to remove zinc from stormwater. Each insert shall be inspected as part of the monthly inspections required by the General Permit. In addition, each insert shall be inspected when rain is forecast. Worn or damaged inserts will be replaced. Accumulated sediment and debris in the inserts will be checked and removed weekly or as needed. The inserts shall be checked for damage after each storm event and repaired or replaced if necessary. Lynx shall comply with any other maintenance recommendations provided by Stormwater Rx.

    b.    Lynx shall install the sampling location described in Paragraph 5 above.

    c.    During the rainy season from October 15 through April 15, and when rain is forecast outside of that time period, Lynx shall keep all metal scrap, trash and waste bins covered except when in use. During rain events, Lynx shall keep all metal scrap, trash and waste bins covered. During the rainy season from October 15 through April 15, all metal materials stored outdoors shall be stored off of the ground on pallets, shelves, or similar platforms and covered with waterproof

tarps or roofing.

  d. By not later than February 1, 2021, Lynx shall complete coating the Facility's roof in a manner that effectively reduces the potential for the roof to contribute zinc to the Facility's storm water discharges ("Roof Coating"). Within ten (10) days of Roof Coating, Lynx shall provide CSPA with a written report certifying that it has completed the Roof Coating.

  e. Lynx shall conduct sweeping of all paved areas of the Facility using the Facility's mechanized sweeper and, as necessary, hand-sweeping. Lynx shall sweep all paved areas in anticipation of any storm events and at least twice per week during the rainy season. Lynx shall sweep all paved areas at least weekly during the dry season. All sweeping activities shall be recorded in a sweeping log.

  f. By not later than February 1, 2021, Lynx shall procure a proposal from StormwaterRx for the purchase or lease and installation of an advanced storm water treatment system meeting the minimum design storm standards set forth at Section X.H.6 of the General Permit for treating stormwater at the Facility that would otherwise flow to and through Drain 9. The proposed treatment system shall be designed to reduce all pollutants in the Facility's stormwater discharge to and through Drain 9 sufficient to achieve all numeric action levels set forth in the General Permit. The proposed treatment system shall be identified and discussed in the Facility's SWPPP as well as any future Environmental Response Action ("ERA") evaluations or ERA action plans. Lynx shall provide a copy of the proposal and relevant supporting materials by February 1, 2021.

9. **Confirmation of New Structural BMPs.** Not later than December 31, 2020, Lynx shall confirm the installation of the measures described above in Paragraph 8 by submitting digital photos to CSPA.

10. **Monitoring.** For the duration of this Consent Decree, Lynx shall analyze each storm water sample taken in accordance with the General Permit and this Consent

Decree for, at a minimum, pH, total suspended solids, oil and grease, aluminum, iron, zinc, and nitrate + nitrite as nitrogen.

11. **Digital Photographs of Sampling Events.** During all storm water samples taken during the term of this Consent Decree, Lynx shall take digital photographs of storm water sampling locations as well as the areas immediately surrounding each drainage location. Within one (1) week that Lynx uploads the sampling results of a particular sampling event to the State Water Resources Control Board's ("State Board") "Storm Water Multiple Application and Report Tracking System ("SMARTS") database, Lynx shall submit to CSPA copies of the photographs that pertain to the respective sampling event.

12. **Provision of Documents and Reports.** During the life of this Consent Decree, Lynx shall provide CSPA with a copy of all documents submitted to the Central Valley Regional Water Quality Control Board ("Regional Board") or the State Board concerning the Facility's storm water discharges, including but not limited to all documents and reports submitted to the Regional Board and/or State Board as required by the General Permit. Such documents and reports shall be mailed or e-mailed to CSPA contemporaneously with submission to such agency. However, if Lynx provides the documents to the State Board via upload to the SMARTS database, Lynx shall only be required to provide CSPA with an e-mail notification that it has uploaded said documents to SMARTS.

13. **Amendment of Storm Water Pollution Prevention Plan ("SWPPP").** By not later than December 31, 2020, Lynx shall amend the Facility's SWPPP to incorporate all best management practices and the sampling requirements set forth in Paragraphs 7, 8 and 10 of this Consent Decree. Lynx shall ensure that all maps, tables, and text comply with the requirements of the General Permit. Lynx shall ensure that the SWPPP describes all structural and non-structural BMPs and details the measures to be installed. Lynx shall address Area E of the Facility as an area with stormwater associated

with industrial activities governed by the General Permit. Lynx shall include in the SWPPP all required information for Area E. Lynx shall update the Facility map to accurately depict the surface flow of all storm water at the Facility. Lynx also shall update the facility map to identify the general location of underground storm drain pipes at the Facility and the direction of storm water flow in those pipes. A copy of the amended SWPPP shall be provided to CSPA within thirty (30) days of completion.

14. **Meet and Confer Regarding Exceedance of NALs.** If the Facility's storm water sampling results during the 2020-2021 or 2021-2022 reporting years indicate that the average of the analytical results for a particular parameter exceed the annual NALs (as set forth in the General Permit), Lynx agrees to take responsive actions to improve its storm water management practices, including re-evaluating its structural and non-structural BMPs and considering implementing additional BMPs and advanced treatment intended to ensure that pollutant levels measured in the facility's storm water samples will achieve NALs. Also, if two or more analytical results from samples taken for any parameter exceed the instantaneous maximum NAL, Lynx agrees to take responsive actions to improve its storm water management practices, including re-evaluating its structural and non-structural BMPs and considering implementing additional BMPs and advanced treatment intended to ensure pollutant levels measured in the facility's storm water samples will achieve NALs.

    a. In furtherance of improving its storm water management practices, Lynx shall prepare a written statement ("Action Plan") discussing:

        (1) Any exceedance or exceedances of NALs;

        (2) An explanation of the possible cause(s) and/or source(s) of any exceedance; and

        (3) Responsive actions to improve its storm water management practices, including modified or additional feasible BMPs to be

considered to further reduce the possibility of future exceedance(s), and the proposed dates that such actions will be taken.

  (4) Either a commitment to install advanced treatment, including the StormwateRx advanced treatment alternative, or a detailed discussion of why that advanced treatment option, and other similar advanced treatment options, are not necessary to achieve NALs at the Facility.

Such Action Plan shall be e-mailed to CSPA not later than July 30th during each year of this Consent Decree in which the average of analytical results exceed NALs or in which there are two or more exceedances of instantaneous maximum NALs.

  b. Upon receipt of the Action Plan, CSPA may review and comment on any identified or omitted additional measures. If requested by CSPA within thirty (30) days of receipt of such Action Plan, CSPA and Lynx shall meet and confer and conduct a site inspection within sixty (60) days after the due date of the Action Plan to discuss the contents of the Action Plan and the adequacy of proposed measures to improve the quality of the Facility's storm water to levels at or below the NALs. If within twenty-one (21) days of the SETTLING PARTIES meeting and conferring, the SETTLING PARTIES do not agree on the adequacy of the additional measures set forth in the Action Plan, the SETTLING PARTIES shall engage in the dispute resolution procedures pursuant to Paragraphs 23 and 24 below.

  c. The SETTLING PARTIES may agree in writing to extend any dates contained in this paragraph in order to further this Paragraph's meet and confer procedure.

15. Any concurrence or failure to object by CSPA with regard to the reasonableness of any additional measures required by this Consent Decree or

implemented by Lynx shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's storm water discharges into compliance with applicable water quality criteria, NALs, or the BAT/BCT requirements or any other effluent limitations set forth in the General Permit.

16. **Mitigation Payment.** In recognition of the good faith efforts by Lynx to comply with all aspects of the General Permit and the Clean Water Act, and in lieu of payment by Lynx of any civil penalties, which have been disputed but may have been assessed in this action if it had been adjudicated adverse to Lynx, the SETTLING PARTIES agree that Lynx will pay the sum of twenty thousand dollars ($20,000) to the Rose Foundation for Communities and the Environment ("Rose Foundation") for the sole purpose of providing grants to environmentally beneficial projects relating to water quality improvements in the Sacramento-San Joaquin Delta watershed. Payment shall be provided to the Rose Foundation as follows: Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607, Attn: Tim Little. Payment shall be made by Lynx to the Rose Foundation within sixty (60) calendar days of the Effective Date. Lynx shall copy CSPA with any correspondence and a copy of the check sent to the Rose Foundation. The Rose Foundation shall provide notice to the SETTLING PARTIES within thirty (30) days of when the funds are dispersed by the Rose Foundation, setting forth the recipient and purpose of the funds.

17. **Fees, Costs, and Expenses.** As reimbursement for CSPA's investigative, expert and attorneys' fees and costs, Lynx shall pay CSPA the sum of thirty-five thousand dollars ($35,000). Payment shall be made by Lynx within sixty (60) calendar days of the Effective Date. Payment by Lynx to CSPA shall be made in the form of a single check payable to "Lozeau Drury LLP," and shall constitute full payment for all costs of litigation, including investigative, expert and attorneys' fees and costs incurred by CSPA that have or could have been claimed in connection with CSPA's claims, up to and including the District Court's entry of the Consent Decree.

18. **Compliance Oversight Costs.** As reimbursement for CSPA's future fees and costs that will be incurred in order for CSPA to monitor Lynx's compliance with this Consent Decree and to effectively meet and confer and evaluate storm water monitoring results and BMPs for the Facility, Lynx agrees to reimburse CSPA for its reasonable fees and costs incurred in overseeing the implementation of this Consent Decree up to but not exceeding two thousand five hundred dollars ($2,500) per reporting year. Fees and costs reimbursable pursuant to this paragraph may include, but are not limited to, those incurred by CSPA or its counsel to conduct site inspections, review water quality sampling reports, review annual reports, discussion with representatives of Lynx concerning potential changes to compliance requirements, preparation and participation in meet and confer sessions and mediation, and water quality sampling. No later than the termination date of this Consent Decree, CSPA shall provide an invoice containing an itemized description for any fees and costs incurred in overseeing the implementation of this Consent Decree during the prior reporting year(s). Up to two annual payments (one addressing any monitoring associated with the 2020-2021 reporting year and one addressing monitoring associated with the 2021-2022 reporting year) shall be made payable to "Lozeau Drury LLP" within thirty (30) days of receipt of an invoice from CSPA that contains an itemized description of fees and costs incurred by CSPA to monitor implementation of the Consent Decree.

III. **COMMITMENT OF CSPA**

19. **Review by Federal Agencies.** On October 14, 2020 and December 15, 2020, CSPA submitted the terms of this Consent Decree to the U.S. EPA and the U.S. Department of Justice ("hereinafter, the "Agencies") via certified mail, return receipt requested, and a follow-up e-mail for review consistent with 40 C.F.R. § 135.5. The Department of Justice sent the parties correspondence indicating that the federal agencies had no objection to the [Proposed] Consent Decree. The letters are attached hereto as Exhibit D.

20. **Stipulated Request for Entry of Consent Decree.** The Settling Parties agree that CSPA shall file a Request for Entry of Consent Decree thereon with the United States District Court for the Eastern District of California ("District Court"), with this Consent Decree attached and incorporated by reference.

## IV. NO ADMISSION OR FINDING

21. Neither this Consent Decree nor any payment pursuant to the Consent Decree nor compliance with this Consent Decree shall constitute evidence or be construed as a finding, adjudication, or acknowledgment of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule or regulation. However, this Consent Decree and/or any payment pursuant to the Consent Decree may constitute evidence in actions seeking compliance with this Consent Decree.

## V. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

22. In consideration of the above, and except as otherwise provided by this Consent Decree, the SETTLING PARTIES hereby forever and fully release each other and their respective parents, affiliates, subsidiaries, divisions, insurers, successors, assigns, and current and former employees, attorneys, officers, directors, members, shareholders, and agents from any and all claims and demands of any kind, nature, or description whatsoever, known and unknown, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which it may presently have, or which may later accrue or be acquired by it, arising from the Complaint or 60-Day Notice Letter, including, without limitation, all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed in the Complaint or 60-Day Notice Letter, for the alleged failure of Defendant to comply with the Clean Water Act at the Facility, up to and including the Termination Date of this Consent Decree.

23. The SETTLING PARTIES acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The SETTLING PARTIES hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and Complaint at the Facility up to and including the Termination Date of this Consent Decree.

24. For the period beginning on the Effective Date and ending on the Termination Date, CSPA, its officers, or executive staff, will not file or support other lawsuits, by providing financial assistance, personnel time or other affirmative actions, against or relating to the Facility that may be proposed by other groups or individuals who would rely upon the citizen suit provision of the Clean Water Act to challenge the Facility's compliance with the Clean Water Act, or the General Permit.

## VI. TERMINATION DATE OF CONSENT DECREE

25. This Consent Decree shall continue in effect from the Effective Date until December 20, 2022 (the "Termination Date"), or through the conclusion of any proceeding to enforce this Consent Decree, or until the completion of any payment or affirmative duty required by this Consent Decree.

## VII. DISPUTE RESOLUTION PROCEDURES

26. Except as specifically noted herein, any disputes with respect to any of the provisions of this Consent Decree shall be resolved through the following procedure. The SETTLING PARTIES agree to first meet and confer in good faith to resolve any dispute arising under this Consent Decree. In the event that such disputes cannot be resolved through this meet and confer process, the SETTLING PARTIES agree to

request a settlement meeting before the Magistrate Judge assigned to this action. In the event that the SETTLING PARTIES cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the SETTLING PARTIES agree to submit the dispute via motion to the District Court.

27. In resolving any dispute arising from this Consent Decree, the Court shall have discretion to award attorneys' fees and costs to either party. The relevant provisions of the then-applicable Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the District Court.

## VIII. MISCELLANEOUS PROVISIONS

28. **Effective Date.** The Effective Date of this Consent Decree shall be upon the subsequent entry of the Consent Decree by the Court.

29. **Impossibility of Performance.** Where implementation of the actions set forth in this Consent Decree, within the deadlines set forth in those paragraphs, becomes impossible, despite the timely good faith efforts of the SETTLING PARTIES, the party who is unable to comply shall notify the other in writing within seven (7) days of the date that the failure becomes apparent, and shall describe the reason for the non-performance. The SETTLING PARTIES agree to meet and confer in good faith concerning the non-performance and, where the SETTLING PARTIES concur that the non-performance was or is impossible, despite the timely good faith efforts of one of the SETTLING PARTIES, new performance deadlines shall be established. In the event that the SETTLING PARTIES cannot timely agree upon the terms of such a stipulation, either of the SETTLING PARTIES shall have the right to invoke the dispute resolution procedure described herein.

30. **Construction.** The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, the Clean Water Act, or specifically herein.

31. **Choice of Law.** This Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

32. **Severability.** In the event that any provision, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

33. **Correspondence.** All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by regular, certified, overnight mail, or e-mail as follows:

| If to CSPA: | Bill Jennings, Executive Director California Sportfishing Protection Alliance<br><br>3536 Rainier Road<br>Stockton, CA 95204<br>(209) 464-5067<br><br>deltakeep@me.com | Copy to: | Michael R. Lozeau<br>E. Paige Fennie<br><br>Lozeau Drury LLP<br>1939 Harrison Street, Suite 150<br>Oakland, CA 94612<br>(510) 836-4200<br>michael@lozeaudrury.com<br>paige@lozeaudrury.com |
| --- | --- | --- | --- |
| If to Lynx: | Vance Anderson<br>Lynx Enterprises, Inc.<br><br>724 E. Grant Line Road<br>Tracy, CA 95304<br>(209) 833-3400<br><br>vance@lynxenterprises.com | Copy to: | Horace W. Green<br>Brothers Smith LLP<br>2033 N. Main Street, Suite 720<br>Walnut Creek, CA 94596<br>(925) 944-9700<br>hgreen@brotherssmithlaw.com |

Notifications of communications shall be deemed submitted on the date that they are e-mailed, postmarked and sent by first-class mail, or deposited with an overnight mail/delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices.

34. **Counterparts.** This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

35. **Assignment.** Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the SETTLING PARTIES, and their successors and assigns.

36. **Modification of the Agreement.** This Consent Decree, and any provisions herein, may not be changed, waived, discharged or terminated unless by a written instrument, signed by the SETTLING PARTIES.

37. **Full Settlement.** This Consent Decree constitutes a full and final settlement of this matter. It is expressly understood and agreed that the Consent Decree has been freely and voluntarily entered into by the SETTLING PARTIES with and upon advice of counsel.

38. **Integration Clause.** This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the SETTLING PARTIES and expressly supersedes any and all prior oral or written agreements covenants, representations and warranties (express or implied) concerning the subject matter of this Consent Decree.

39. **Authority.** The undersigned representatives for CSPA and Lynx each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

40. The SETTLING PARTIES hereto enter into this Consent Decree, Order and Final Judgement and submit it to the Court for its approval and entry as a final judgment.

Date:_____, 2020          CALIFORNIA SPORTFISHING
                                   PROTECTION ALLIANCE


                                   _____
                                   William Jennings
                                   Executive Director

Date:_____, 2020          LYNX ENTERPRISES, INC.


                                   _____
                                   Vance Anderson
                                   Chief Executive Officer

Approved as to form:

Date:_____, 2020          LOZEAU DRURY LLP


                                   _____
                                   Michael R. Lozeau
                                   Attorneys for California Sportfishing Protection
                                   Alliance

Date:_____, 2020          BROTHERS SMITH LLP


                                   _____
                                   Horace W. Green
                                   Attorneys for Lynx Enterprises, Inc.

| | |
|---|---|
| 1 | <div align="center">ORDER</div> |
| 2 |     The proposed consent decree is approved and adopted. If the parties later propose |
| 3 | to modify the consent judgment in this action, they shall notify the United States and |
| 4 | provide a copy of their proposed modifications. The court will not approve any such |
| 5 | proposed modifications sooner than 45 days before notice is so provided to the United |
| 6 | States. |
| 7 | |
| 8 |     **IT IS SO ORDERED.** |
| 9 | DATED: June 23, 2021. |

_____
CHIEF UNITED STATES DISTRICT JUDGE